

U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

September 15, 2018

<u>VIA ECF</u>

The Honorable Edgardo Ramos
United States District Judge
Southern District of New York
40 Foley Square
New York, New York 10007

Re:   *United States v. Reynaldo Lopez*, 18 Cr. 142 (ER)

Dear Judge Ramos:

The defendant in the above-captioned case, Reynaldo Lopez, is scheduled to be sentenced on September 19, 2018, at 11:00 a.m., for participating in numerous criminal activities in 2017 and 2018, including credit card fraud, in violation of Title 18, United States Code, Section 1029(a)(2); aggravated identity theft, in violation of Title 18, United States Code, Section 1028(A)(a)(1) and 1028(b); the possession and use of counterfeit United States currency, in violation of Title 18, United States Code, Section 472; and the attempted trafficking of kilograms of heroin, in violation of Title 21, United States Code, Sections 846 and 841(b)(1)(C).  As detailed below, the defendant engaged in these crimes while employed as a New York City Police Department ("NYPD") officer, betraying the trust and authority vested in him as an officer of the law.

The Government respectfully submits this letter in advance of the sentencing and in response to the defendant's pre-sentence submission of September 11, 2018 ("Def. Mem."). As set forth in the Presentence Investigation Report ("PSR"), the United States Sentencing Guidelines ("Guidelines" or "U.S.S.G.") range applicable to the defendant is 135 to 168 months of imprisonment.  (PSR ¶ 18, 117).

I.   **Offense Conduct**

The charges in this case stem from various criminal conduct undertaken by the defendant in 2017 and 2018, including credit card fraud, identity theft, the possession and use of counterfeit United States currency, and attempted trafficking of kilograms of heroin.  (PSR ¶¶ 9-12).  All of this conduct occurred while the defendant was an NYPD officer, most recently assigned to the Anti-Terrorism Unit in the Transit Bureau.  (PSR ¶ 23).

Honorable Edgardo Ramos
September 15, 2018
Page 2

Credit Card Fraud and Identity Theft

From at least May 2017 until his arrest, the defendant participated in a counterfeit credit card fraud scheme in which he obtained and used stolen personal identifying information to create and utilize fraudulent credit cards. (PSR ¶¶ 25-26). The stolen personal identifying information, including stolen credit card information, was obtained by the defendant and his co-conspirators from various sources, including through a co-conspirator's workplace—and, the defendant believed, from an employee of a credit card company (who was in fact an undercover NYPD officer). The defendant then produced counterfeit credit cards encoded with the customer identification information and used those fraudulent cards to make and attempt to make thousands of dollars of unauthorized purchases. (PSR ¶ 27).

Those purchases included gift cards, electronics, clothing, movie tickets, and other merchandise at retail stores, restaurants, theaters, and other businesses in and around New York and New Jersey. (PSR ¶ 28). Moreover, in addition to creating fraudulent credit cards using stolen identifying information, the defendant made numerous purchases at luxury retail establishments with his own credit card before falsely reporting that the card had been stolen. (PSR ¶ 31).

The defendant met multiple times with an undercover NYPD officer ("UC-1"), whom the defendant believed was an employee of a credit card company, and with whom the defendant attempted to conspire as part of his fraudulent scheme. Among other things, the defendant stated to UC-1 that he was a "cop" and that he relied on fraudulent credit cards for "cash flow." (PSR ¶¶ 38-39). The defendant spoke with UC-1 in sophisticated terms about different types of credit cards and their respective usefulness in fraudulent activity, and also discussed the technological processes to create fraudulent credit cards. (PSR ¶¶ 39-41). As part of those discussions, the defendant showed UC-1 a device used to create fraudulent credit cards, commonly referred to as a "skimmer," which the defendant used to apply personal identification information to a fraudulent credit card. (PSR ¶¶ 40-41).

The defendant also provided UC-1 with personal identifying information stolen from customers of a car dealership where a co-conspirator worked, for the purpose of using the stolen identify information in creating and using fraudulent credit cards. That information included photographs of New York State identification cards and credit cards of customers of the car dealership. (PSR ¶¶ 42-43).

Counterfeit United States Currency

During multiple meetings and conversations with UC-1, the defendant also showed UC-1 what appeared to be U.S. currency, and stated that the currency was counterfeit. The defendant said that he previously had used some of the counterfeit money, and showed UC-1 a stack of what appeared to be $100 bills. The defendant provided a $100 bill that the defendant identified as being counterfeit, and which the investigation confirmed was, in fact, counterfeit United States currency. (PSR ¶¶ 44-46).

Honorable Edgardo Ramos
September 15, 2018
Page 3

The defendant further advised UC-1 that he was able to procure additional such counterfeit money. (PSR ¶ 46).

Narcotics Trafficking

During the course of the investigation, the defendant indicated his interest in participating in narcotics transactions, and in particular noted the usefulness of his status as a police officer in providing transportation and protection for drug trafficking. On November 29, 2017, the defendant made good on that interest, attempting to assist and facilitate the trafficking of what he believed was three kilograms of heroin. (*See* PSR ¶¶ 47-53). The defendant believed he would be paid $2,000 for his role in the transaction. (PSR ¶ 50).

As part of that attempted transaction, an undercover officer ("UC-2") explicitly noted to the defendant the weight and type of purported narcotics, as well as showing the defendant the bag of "heroin" to be transported by the defendant from New Jersey to the Bronx. (PSR ¶ 49). During the transaction, the defendant stated that he previously had trafficked narcotics, explaining, "with me it's guaranteed, they know for sure, they just send me out, do your thing, get an address, meet the person, do your thing, and I'm gone." (PSR ¶ 49).

The defendant transported the substance to a specified location and was arrested upon arrival. (PSR ¶¶ 52-53). At the time of his arrest, the defendant was in possession of a firearm, identified as a Glock semi-automatic pistol. (PSR ¶ 54).

**II.     The Defendant's Plea and Applicable Guidelines Range**

On February 16, 2018, the defendant pleaded guilty before this Court to a four-count criminal information (the "Information") charging him with the above-described counts, pursuant to a plea agreement with the Government (the "Plea Agreement").

Under the Guidelines and as set forth in the Plea Agreement, the sentencing range applicable to the defendant's conduct is 135 to 168 months' imprisonment, with a mandatory term of 24 months of imprisonment, which must be served consecutively to any other sentence. (PSR ¶¶ 8-18, 60-89, 115-17).

**III.    Discussion**

The general purposes of sentencing include the need for the sentence imposed to promote respect for the law, to afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant. *See United States* v. *Park*, 758 F.3d 193, 197 (2d Cir. 2014) (citing 18 U.S.C. § 3553(a)(2)). These purposes are effected by considering, among other factors, the nature of the offense, the defendant's role in the crimes committed, and both general and specific deterrence.

As described above, the crimes here are extremely serious. The defendant's criminal conduct included a panoply of offenses, undertaken on numerous occasions over the course of

Honorable Edgardo Ramos
September 15, 2018
Page 4

many months—all while the defendant acted under the cloak of authority conferred upon him by his position as an NYPD officer.

The defendant's crimes did not involve merely a single false representation, or the fleeting use of identifying information of other individuals, or one act of fraud. Rather, it involved a sustained effort by the defendant to engage in fraud that directly affected innocent victims, to make purchases with counterfeit money, and to exploit his position in law enforcement to facilitate narcotics trafficking.

In light of the nature and circumstances of the offense, and the history and characteristics of the defendant, *see* 18 U.S.C. § 3553(a)(1), a meaningful sentence would particularly satisfy at least two of the statutory sentencing objectives: (1) the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense, *id*. § 3553(a)(2)(A); and (2) the need to afford adequate deterrence to criminal conduct, *id*. § 3553(a)(2)(B).

The defendant's crimes require a significant sentence to reflect the appalling disregard for the law demonstrated by his conduct. He betrayed the trust and authority of his position as a law enforcement officer, victimizing the very kinds of individuals he had sworn to serve and protect. He also abused his position in attempting to contribute to the dangerous and damaging effects of narcotics upon the community.

The Government does acknowledge the defendant's lack of criminal history, as well as his acceptance of responsibility for his actions and his swift acknowledgement of his guilt. *See* Def. Mem. 4-5. The defendant has also maintained legitimate employment, and has adjusted well to pretrial supervision, following his arrest. *See* Def. Mem. 6. Those factors, appropriately considered by the Court under Section 3553(a), are balanced against the seriousness of the crimes, the defendant's particular roles, and the harmful effects of his conduct—particularly in light of the defendant's former status as a law enforcement officer.

                Respectfully submitted,

                GEOFFREY S. BERMAN
                United States Attorney

By: _____
    Alex Rossmiller
    Assistant United States Attorney
    Southern District of New York
    (212) 637-241

Cc:    Edward McQuat, Esq., *counsel for defendant* (via ECF)